Mr. Justice Johnson
 

 delivered the opinion of the Court.—
 

 This cause comes up from the Circuit Court of Ohio, on a writ of error. The record exhibits a judgment recovered by the . defendants here, against the plaintiffs, in an action for money lent
 
 *612
 
 and advanced.' The plea was
 
 non assumpsit,
 
 with notice of
 
 a
 
 discount, and a verdict for plaintiff below.
 

 The errors assigned arise upon various bills of exception, the first of which was taken to the evidence offered to maintain an action, in these words, 4< The plaintiff in support of his action, offered in evidence the following promissory note drawn by Isaac Cook, and endorsed by Humphrey Fullerton, John Waddle apd John Carlisle.”
 

 “§4000
 
 Cincinnati, February 1st,
 
 1820.'
 

 Sixty days after date, I promise to pay John Carlisle, or order, at the office of .discount and deposit of the Bank of the United States at Cincinnati, four thousand dollars, for value received.
 

 (Signed) • Isaac Cook.
 

 Endorsed:
 
 — John
 
 Carlisle, John Waddle, Humphrey Fullerton.”,
 

 “To the introduction of this evidence the defendant by his counsel objected, as evidence of a several, contract of the drawer and .each of the endorsers on the -note, and not of any joint undertaking or liability of the defendants, which objection, was overruled by the Court, and the note permitted'to be read in evidence, under the Act of the general assembly of Ohio,, entitled •* An Act to regulate judicial- proceedings,. where banks and bankers, are. pames, and to prohibit the issuing of bank bills of certain descriptions,’passed 18th of February 1820, to which decision the counsel excepted. ”
 

 ■Cook, it appears, was originally made a party defendant to the action,, but died pending, the suit; the plaintiff suggested his death on the record, and went to trial'against the remaining three' defendants.
 

 In order to understand the bearing which the instruction moved fo,r has upon the Cause, it is necessary to remark, that the state of Ohio was not received into the Ünion u'n.til-1802; so that the process Act of 1792, .which is expressly -confined in its operation to the day of its passage, in adopting the practice- of the state Courts into the Courts of the United States, could have no-operation in that, state. But the District Court of the United Státes, established in the state in 1803, was vested with all the. powers and jurisdiction of the. District Court of Kentucky, which exercised full Circuit Court jurisdiction, with power to create a practice for its own government.
 

 The District Court of Ohio, it appears, did not create a system for itself, but finding one established in the state, in the .true spirit of the policy pursued by the United. States, proceeded to administer justice according to the practice of the state Courts; or in effect adopted by a single rule, the state system
 
 *613
 
 of practice, in. the samé, mode in which this Court, at an early period,' adopted the practice of the King’s Bench in England. So that when the seventh Circuit was established,- in the year 1807", the judge of this.Court, who was assigned to that Circuit, found the .practice of the state Courts adopted in" fact into the Circuit Court of the United States.
 

 .• ft has not-been deemed necessary to make, any material alterations since; but as fár .as' it was found practicable and convenient, the state practice has; .by an uniform understanding, been pursued .by that Court without having passed,any positive-rules upon .the subject. The Act of the 18th February. 1820, alluded to in .the bill of exceptions, was -a very wise and benevolent law, calculated, principally, to1 relieve the parties to promissory notes from accumulated expenses-; its salutary effects produced its immediate adoption into-the practice of the Circuit .Court of the United Statesand.from that time, to the present, in innumerable instances,-, suits have been-there .prosecuted under, it». .The .alteration in practice, (properly so called) produced by-’the operation of this Act,-was very inconsiderable, since it only-requires notice to be .given, of the causé of action by endorsing it on the wr|t and'filing, it with- the-declaration, after which the defendants were at liberty to manage their defence, as if the note had been formally declared upon in the usual man?, nér. . *
 

 It.is not contended that a practice as such, can only be sustained by,written rules; such-must be'the extent to-which the argument goes,' or certainly it would not be supposed, that a-party’ pursuing a former mode of proceeding, ’ sanctioned by . the-most solemn acts of-the Court, through the course of eight years, is now to be surprised and tumed-oat of Court, upon a ' ground which has no bearing upon the-merits.
 

 But. we aré decidedly of opinion,-the objection cannot .be maintained!' '[Written rulés are unquestionably to be preferred,, because their commencement, and their action;, and their, meaning, are most conveniently determined;' but what want.of certainty can there be, where a Court by long acquiescence has- ■ established it . to be the law of that Court, that the stated-practice. shall- be their practice, as far as they have the means of carrying it into effect, or-until, deviated from by positive rules of their own making. Such w.e understand, has been the course, of.the United States'Court in Ohio, for twenty-five years past. The practice may-have begun and probably did begin in a mistaken construction of the process Act, and then it partakes of the áuthority of adjudication. . But there was a higher .motive for adopting the provisions of. this law, into the .practice of that Court; and this bill'of. exceptions brings up one of those difficult question;;, which must often occur in a Court in which
 
 *614
 
 the remedy is prescribed by- one sovereign, and the law of the contract by another. It is not easy to draw: the line between the remedy and the right, where the remedy constitutes so, important a part of the right; wot is it easy to redUce into practice the exercise of a-plenary power over contracts, without the right to declare by what evidence contracts shall be judicially established. Suppose'the statemf Ohio had' declared'th!at the undertaking of the drawer and endorser of anote, shallbe joint and not several, or contingent; and that such not¡e shall be good evidence to maintain an action for money .lent and advanced; would not this become a law of the contract ? where then would be the'objection to its .being acted upon in the Courts of the United States'? Would it have*beén-prudent or respectful, -or evén legal, to have excluded fro-m all operation in the Courts of the United States, an Act which had so important a bearing upon the law of. contracts, as that now under - consideration ? An Act in its provisions so salutary to the citizen, and which; in the daily administration of justice in the state Courts would not have been called upon otherwise than as a law'.of the particular contract; a law, which as to'promissory notes introduced an exception into the law of evidence, and of actions.. It is true, the Act in some of its provisions,-has inseparably connected the mode of proceeding, with the - right of recovery.' But what, is the course of .prudence and duty, where thése cases of difficult distribution as to power and right present themselves ? It is to yield father than encroach; the.duty is ¿reciprocal, and will no'doubt be met in the spirit of moderation and' comity. In the conflicts of power and opinion, inseparable from-our very-peculiar relations, cases .may occur, in which'.the maintenance'óf principle, and the, administration of justice ac- ' cording to its innate and inseparable attributes-, may require a different course; and when-such cases do occur, our Courts must do their duty,; but until then, it is’administering justice in' the true spirit of the Constitution ■ and laws of the United States, to conform', as nearly as practicable, to the administration of justice in the Co.urts of the'state.
 

 In the'present instance, 'the Act was conceived in the true spirit of distributive justice;'violated no principle¡ was easily-introduced into the-practice-of the Courts of the United States; has been there acied -upon through a period of eight-years;' and- has been properly treated as a paft of the law of that Court. But, it is contended that it was improperly ápplied to the present case, because the note bears date prior to the passage of the laW; and this certainly presents á question which is always to be 'approached with due precaution, to wit, the extent of legislative power over existing contracts.
 

 But what right is violated, what hardship or. injury pro-. .
 
 *615
 
 duced, by the operation of this Act? It was passed for the relief of the defendant, and is effectual in relieving him from a weight-of costs, sinceit gives to the plaintiff no more than the costs of a single suit, if he should elect to bring several actions against drawer and endorser. Nor does it subject the defend--antsto any inconvenience, from a joint action; since it secures to eafch defendant, every privilege of pleading and defence of which he could avail himself if .severally sued. The Circuit Co.urt has incorporated the action with all its incidents, into its course of practice; and having full power by law to ado{>tit, weseeno legal objection to its doing' so, in the prosecution of. that' system; ■ upon which it has always acted. It cannot be. contended that the liabilities of the defendants under their, contract, have been Increased, or even varied; and as to change in the mere form of the remedy, the doctrine cannot be maintained, that this-is forbidden to the legislative power or to the tribunal itself, when vested with full power to regulate its ¿wn practice.
 

 The next bill of exceptions haS relation, exclusively to the discount It séts' out a great deal of evidence, and sixteen specifications, if theymay bé so called, of the prayers-asked of the Court by the defendant’s" counsel; the whole.making out this case. It appears that in December'
 
 1817,
 
 Isaac' Cook’s note, with these .'endorsers upon if, was discounted at the bank of Cincinnati,, and renewed every sixty days down to February 1st 1820; It commenced at ¡86000, and in September 1818 was reduced to 84000, for which amount it was renewed uniformly down to the last date. ■ In its origin,, .one M‘Laughlin,?s name was also on the paper,-and Sometimes hp, and'sometimes Cook, was the.last endorser, until March .1819,When Cook, was uniformly the last endorser down-to- the date of the' presént note. " The.proceeds-of the successive renewals, were of course credited to him, and passed to the payment of tlie' preceding note.
 

 But on this note Fullerton stands as the last endorser, and the proceeds were, credited to,him, and Cook’s nóte,of. the' preceding datG was charged to Fullerton’s account withoút his check;' thus balancing the ctedif which the discounting of "the. last renewal gave to Fullerton oh the books of the bank. The note, so charged was. of-course not protestéd, and thus Fullerton and his co-endorsers escaped payment of that note;.and'now they propose to escape the paymentof this, by insistinjj.that',without.a check from Fullerton, authori¡5Íng;the application, .of .the proceeds as- credited to .him, to .the payment of the previous note,the bank is still indebted to' him; to that amount. .This-is an Ungracious defence, and one which ho Court of justice.can.feel' disposed to sustain. To repel it, the plaintiffs introduced witnesses to prove; that this note was expresslv- discounted,in or
 
 *616
 
 der that .the proceeds might be applied to the previous note} anil would not have been -discounted otherwise; and contend, that the bank, having the fund -in-hand to pay itself, had a right so to apply it without a'check,’ upon the ground of implied-assent, With a view to that question, the defendants below have introduced thirteen out of sixteen of their prayers. They all, go’ to maintain the single proposition,’ that Fullerton, as last endorser, was entitled to credit for-the proceeds of, this’ note, and is still entitled, , if they have not been legally applied to the payment of the note which preceded it.
 

 The remaining three-prayers, to wit, the 13th, 14th, and. 15th, raise a question on the sufficiency of the’ demand on’ the drawer, and of the notice of - non-payment to the endorser, and the proof introduced to establish both facts.
 

 The entry in the record on the subject of the charge to the jury, is in these terms. ts But the Court instead of the forego* ing instructions as asked, charged and instructed the jury, that to enable the plaintiffs to recover, .the jury ought to he satisfied from’ the’ evidence that the note had been discounted by and become the property of the bank; that it was in the bank and hot paid, when it came to maturity; that due notice ofjthe protest and non-payment, had been given to the parties, and that such notice had been put into the post-office the day after the last day of gracé in time to - go- by the
 
 succeeding
 
 mail; that every note’ discounted in bank, was
 
 prima facie
 
 to be regarded as' a business note', and. that-when such notes were discounted, generally and regularly, the proceeds,of thenoteshould.be carriéd to the credit of the last endorser, and paid to his check that the printed and published rules of the bank, ought in the absence of other testimony- to be considered as regulating the course of business of^the bank; but that if the jury were satisfied from the evidence, that a practice and course of business in the office of discount and deposit in Cincinnati, had prevailed and was known to defendants, and’that the note in question had been discounted and treated in all respects, according to .'such practice apd course of business,- but not according to the printed rules, the plaintiffs had a right to recover. That the bank had. not a right to apply the'proceeds of the note contrary to the understanding, and directions of the last endorser, or to any other use than the use of the last endorser, without- his consent; but that if the jury were satisfied from tjie-evidence, that according to the custom and practice of the bank in the case when a new note was -put into -the bank for the purpose of renewing and continuing a former loan or discount, the check of the last en - dorser was sometimes required, and sometimes dispensed with, and that in the latter case, it was the practice to file away the old note as a check; and (hat, if the note sued upon had beep
 
 *617
 
 discounted and treated in the Iattér manner, with the consent of the parties to it, the plaintiffs had a fight to recover, and that such consent may be inferred and found by the jury, from the facts and circumstances given in evidence, without direct or positive proof,,if in the opinion of the jury the facts and circumstances proved, warrant such inference. That if .the jury find the note was not discounted,' the plaihtiff cannot recover; or if they find that it was discounted, but the proceeds remain in the bank carried to the credit of the last endorser, and not drawn or applied with his consent to any other purpose,-the ■ money may and ought to be set off against the note ;• but if they find, that the note sued on was put into .bank for the purpose.of renewing a former note or loan, and for no other purpose, and with the-understanding of all the parties,, that if discounted the •proceeds could andwould, by the course of business in.thebank, be applied solely .to the discharge of the, former noté,, and that they had been so applied, and the,old note retained, and written off as a check,by the bank; that the plaintiffs ought to recover.”
 

 ■ The exception taken is, to- refusing to give the instructions as asked, and to- giving them in the .form in. which they were propounded to the jury. And -the - question is whether the instruction'given covered the. whole'ground of the instructions prayed for, apd were legally correct, in the form in which they were rendered.
 

 We are of opinion-they cover the whole ground taken-by the defendants, or at least as far as they had. á right to require. This will be obvious from a simple analysis of the. charge. The propositions which it imports, will be examined in their .order. The first is upon, the sufficiency of. the demand, and the law laid down on this point is, “ that on a note- made payable at a particular bank, it is sufficient to show, that the note had been discounted and become the property of the- bank,.and that it was in the bank; not paid at maturity.”
 

 Nothing more than this' could have been required of the Court; for the positive proof that the bill was
 
 not paid,
 
 will cer- ■ tainly imply that, there wtere no funds of the .drawer .there to pay it. The fact could • not 'have beep .ma'dé more positive by inspection of the books. The charge is perhaps too favourable to the defendants, since modern decisions go to establish, that if the note-be at the place on tlie day. it is. pay able, this throws the
 
 onus
 
 ofiproof of payment upon the defendant. (4
 
 Johns.
 
 188.) This is more reasonable than to require-of the-plaintiff the proof of a negative, and comports better with the general law of contracts.
 

 The. next instruction is, in the language of the Court, “that notice of the non-payment and .protest, should have been given .to the endorser through the medium of the post-office; the day
 
 *618
 
 after the last day of grace, in time to go by the succeeding mail,”'
 

 The defendant’s counsel,- in arguing on this part of the instruction, insisted much on. the obligation on-the plaintiff to establish definitively and positively, that the -notice given- was _in time to go.by the next-mail; but.has not adverted to his-own omission,.in not putting into„ the case'evidence-that there was a mail established from Cincinnati, to the place of the defendant’s residence. Yet,' if the jury might be left on this point, to take that fact upon notoriety, or personal knowledge, it-would be difficult to maintain that they might not, on the same grounds, find the minor fact, that the notice deposited in any part of the business hours of. that day, would be in time for the mail ensuing the third day of grace. It is argued -that'-the.language used by the Court on this point is equivocal, (and may have Jed the jury to suppose, that sending the notice- by the. mail which
 
 succeeded the day' after ■ the last day
 
 of grace,’.was sufficient. But we think the construction is forced. The words are, “ the day after the last day .of grace, in’time to go by the succeeding mail;”. Succeeding what? obviously-the last day of grace, otherwise there might be no necessity for putting it in the office} until the second day after the last day of grace, whereas the .necessity of puttingit ih on the first day after, is expressed in .the charge.
 

 With this signification it Was rather more favourable than need be given, since the mail of the -next day may have gone out before early business hours, or no mail may have gone out for several days.
 

 The residue of the -charge relates -to thé application of the proceeds of this note, to the previous note without the check of the last endorser; and-this also, we tliink, embraces all the defendants asked, and is as favourable as the law; would sanction. It admits, that this should be'.regarded as a business note, that the proceeds should-have been passed to the credit of the last endorser, and should not have been, applied otherwise than by his assent; but-it then goes'on to assert, what surely could not be controverted, that with the assent.of the last endorser, the money, instéad-of being passed to.Jiis credit might be otherwise applied} that with his consent it might be applied'to the satisfaction of another note, for which he was endorser, without his checking for the amount; and that his consent may .be implied, from circumstances, as alL other facts may be.
 

 The jury have found then, that with his consent it was so applied, and the evidence' fully bore them out in their finding; if competent, it was all the-law requires.
 

 It may be proper to observe that every discount is in the- nature of a cross-action, and if the discóúüt filed in this case were.
 
 *619
 
 thrown into the form of an action, it- would be for money had and received to defendant’s use.
 

 The merits- of this defence need only be tested by the law which governs that action, to make it clear that the evidence would not sustain it. It goes in fact to show, that in what are called renewals of bank loans, the lending is qualified and not absolute; that when credit is given and money advanced upon a note of that description,, it is not an ad y anee on general account, but only for the purpose of a specific application. Any act done by the bank, therefore, whatever be the mere form, if it have for its end the carrying of the. contract into, effect, in its . true spirit and intent, must be binding upon .all the parties to the contract. Nothing more is affirmed in this charge or. verdict.
 

 One general objection-was taken in argument to the instruction given, importing a charge of inconsistency, inasmuch, as although it admits' the note to be -a business note, as.it is called, and therefore to be passed, to. the credit of the last endorser, it permits it to be treated as an-accommodation note, in allowing it to be passed to \ie credit of the drawer. But if this were strictly, the fact, ’wliat defence'does it' afford to the action,, if such were the agreement, á.nd the réaí understanding of the parties ? In strictness, however, it was not passed to the credit'of the drawer alone', for in the progress of the ruinous system of loans, which prevails over the country, the noté discounted as the renewal ofan accommodation note,cannot be called a business note, nor can it in correctness be predicated of such a note, that it,is passed to the credit'of the drawer alone,, when the. last endorser has in effect an equal relief from the application of .the proceeds.
 

 We do not deem if necessary to .consider a question commented Upon in argument, py the counsel for the blank, and perhaps glanced at by the opposite counsel, whether, this note was not .void as an accommodation note, under the rules of the . bank, because not sécured by a deposit of stock.
 

 No one. of the exceptions, raises the question, and we should think it injustice to the counsel for the plaintiffs hére¿ to suppose that he intended ’ to raise it.
 

 Judgment affixmed^ with costs;
 
 ,.