GILLETT, receiver, &c. *vs.* AVERILL & SEYMOUR.

Where a note held by a bank is payable at the bank, no formal demand of the maker is necessary in order to charge the endorser. It is sufficient if the maker have no funds there at its maturity with which to pay it. *Per* WHITTLESEY, J.

A party obtaining a discount or loan may receive other paper of the lender payable on time, of less actual value than the sum secured to be paid to the lender, provided it is given at the bona fide request of the lender and for his accommodation, and there is no intention to take usury. *Semble. Per* WHITTLESEY, J.

But it is not enough to repel the imputation of usury that the proposal to receive such paper comes from the borrower instead of the lender; and where, in such a case, the jury were instructed that if the borrower took the paper at his own request, and it was not forced upon him, the transaction was free from usury, *held* that the charge was erroneous.

ASSUMPSIT on a promissory note against the endorsers, tried at the St. Lawrence circuit, before WILLARD, Cir. J. The plaintiff had been appointed the receiver of the St. Lawrence Bank, an association organized under the general banking law, pursuant to proceedings against that institution as an insolvent corporation; and an assignment to him of its effects had been made. A promissory note made by Sylvester Gilbert, payable to the order of and endorsed by the defendants, for the sum of

$1107,10, three months from date, at the St. Lawrence Bank, and dated December 29th, 1840, was proved and given in evidence. To prove a presentment and notice of non-payment, the plaintiff examined W. H. Hoard, who testified that he was the teller of the bank when the note fell due; and that on that day he drew the note from the package where it was kept, and, knowing that the maker had no funds to pay the note in the bank, he gave notice of non-payment to the endorsers without any formal demand of payment or any actual examination of the maker's account.

The defendants moved for a nonsuit, insisting that there had not been a sufficient presentment of the note for payment. The judge, however, held the demand sufficient, and denied the motion.

Gilbert, the maker, was then examined as a witness by the defendants, and testified that the note in question was the last of a series of four notes, the first having been given by the same makers and endorsers for the sum of $1000, on the 30th day of April, 1839, payable seventy-five days from date, and the others being successive renewals of the first, nothing being added to the original debt except interest and fees of protest. On the discount of the first of said notes the witness said he received the certificate of deposit, which was presented by the defendants' counsel. It was signed by the president and cashier, was dated April 30th, 1839, and by it it was certified that the witness had deposited in the St. Lawrence Bank one thousand dollars, which the bank promised to repay to the witness or order at their office, three months from the date thereof, and on the surrender of the certificate, with interest at the rate of *five per cent. per annum.* The witness said he paid the discount on the note at the time it was discounted at the rate of seven *per cent.;* that he applied to the cashier to have such a note discounted, who said he would do it if the witness would take a certificate of deposit; that the witness then obtained the defendants' endorsement to the said first note, and returned and left the note and took the certificate. The witness said he was at that time a director and the vice president of the bank,

that the discounting of said note was reported by the cashier to the board of directors, and that the same was approved of by the board.

The plaintiff's counsel examined Mr. Doty, the president, and Mr. Bacon, one of the directors of the bank at the time the first note above referred to was discounted, and they testified in substance, that when Gilbert applied for the discount, he said he wished a certificate of deposit for the purpose of remittance; and the first of these witnesses stated that he understood Gilbert to say that a certificate would answer his purpose better than bills. Gilbert was recalled by the defendants and testified that the transaction respecting the discount of the said first note was with the cashier alone, neither of the plaintiff's witnesses being present. The plaintiff proved that Gilbert had said that the certificate was not imposed upon him by the bank; that he wanted it to send south. It was shown that drafts on New-York were at a premium of from $\frac{3}{4}$ths of one per cent. to one per cent. at that time, and were not readily obtainable.

The defendants' counsel asked the judge to charge that the transaction proved was usurious. *per se ;* and also that if the jury should find that Gilbert took the certificate for the purpose of effecting the discount of the note, and not because he preferred it to money, the transaction was usurious. The judge refused so to charge; but he instructed the jury that the case should be viewed with more indulgence on account of having been brought by a receiver upon paper discounted for Gilbert, who was vice president and a director of the bank; that the question was whether it was made a condition on the part of the bank to the discount that Gilbert should take the certificate of deposit instead of money; that if so, the transaction was usurious and the plaintiff could not recover; but if that was not so the transaction was free from usury. The judge then commented on certain discrepancies in Gilbert's testimony, and remarked that the jury might easily believe a case might exist in which a party would prefer a certificate of deposit to bills, for the purpose of remittance, and that if he declined to take the bills because he preferred a certificate, and had so stated,

there would be no usury in the case. He added, at the close of the charge, that if Gilbert took the certificate with his own consent, and it was not forced upon him, the transaction was not usurious. The defendants' counsel excepted to the charge, and the jury found a verdict for the plaintiff for the amount of the note. The defendants moved for a new trial on a bill of exceptions.

*C. G. Myers & J. A. Spencer*, for the defendants. Upon the question of usury they referred to *Dunham* v. *Day*, (13 *John.* 40 ;) *Hammet* v. *Yea,* (1 *Bos. & Pull.* 144 ;) *N. Y. Farmers' Ins. Co.* v. *Ely*, (2 *Cowen*, 678, 706 ;) *Knox* v. *Goodwin*, (25 *Wend.* 643 ;) *Bank of Utica* v. *Wager*, (2 *Cowen*, 712, 705.)

*N. Hill, Jr.* for the plaintiff.

*By the Court*, WHITTLESEY, J. The presentment for payment was sufficient. It is understood to be the custom of banks holding promissory notes, payable at their own counter, to wait, on the day of the maturity of the note, until the close of business hours, and then if the maker has no funds, to give notice of non-payment, without making any other demand of payment. This custom is sanctioned by judicial decisions. (*Bank of the United States* v. *Carneal*, 2 *Pet.* 543 ; *Berkshire Bank* v. *Jones*, 6 *Mass.* 524 ; *Ogden* v. *Dobbin*, 2 *Hall's Rep.* 112.) It may be usual for the teller, or other officer, to inquire of the book-keeper if the maker has any funds ; but in this case such inquiry was unnecessary, as the teller swore that he knew there were no funds in the bank to pay the note. No formal demand or unmeaning proclamation at the close of banking hours for the day was necessary, or is ever necessary in such cases. The objection here only goes to the sufficiency of the demand ; and that is the only objection connected with the protest of the note which it is necessary to consider.

It is insisted that the first of the series of notes was usurious, and if this be so, the note in suit, being a substitute for that, is

Gillett *v.* Averill.

likewise void for usury. If that note and the certificate of deposit which furnished the consideration for it had been paid according to their terms, the result of the operation would have been that the bank, at the expiration of seventy-five days, would have received nearly $1015 from the borrower and would have paid him nothing until the expiration of ninety days, and then less than $1013. Thus the very money which the bank would have paid its borrower, would have been received from such borrower and used by the bank some fifteen days before paying it over to him, and the bank would have pocketed a small difference in addition to the use of the money for fifteen days. Such a transaction would seem to present, on the face of it, a case of usury. The contracts were both payable at the same place. There was therefore no difference of exchange between the place of payment of the two obligations to justify and legalize the addition of the fair premium on such exchange to the legal discount, as may be safely done where such additional premium is not made a mere cover for usury. (*Ontario Bank* v. *Schermerhorn*, 10 *Paige*, 109.) Upon the testimony of the maker, the taking of the certificate was imposed upon him by the bank as a condition to the discounting of the note, which would render the transaction usurious within all the cases; but the other side introduced testimony to show that the offer to take the certificate came from the borrower; that he represented that he wanted it for remittance, and that a certificate would answer the purpose as well or better than the notes of the bank. Thus there is testimony on both sides, and though in any aspect in which the case is placed with all the testimony, it is impossible not to see that the taking the certificate of deposit by the borrower was the inducement to discount his note, yet it was, perhaps, a proper case for the jury. We have then to see whether the instructions of the court contained any error. The charge indicated a natural sympathy for the creditors of this bankrupt institution, represented by the receiver, as plaintiffs, and a leaning against the defence of usury set up by the defendants, who were parties to a note discounted for one who was a director and the vice president of

the bank.    The legal features of the case probably required of
the judge a leaning in the other direction, if it did not justify
him in taking the case under his own control.    At least this
seems to me to be a stronger case against the plaintiff than
that of *The Seneca County Bank* v. *Schermerhorn*, (1 *Denio*,
133,) in which the court held the note infected with usury.
In all such cases we are to inquire whether by the agreement
previous to discounting the note and to induce the discount,
the borrower was to have any thing less valuable to him than
the legal proceeds of the note.    If by the agreement on an ap-
plication for a loan, the borrower was to take uncurrent money,
a draft at an exorbitant premium, or any similar thing be-
yond its true value, the note would be infected with usury and
void.    But if there was no such preliminary agreement—noth-
ing which would prevent the borrower from receiving the pro-
ceeds of his note in cash—he could, after the discount, take
from the lender uncurrent money, or drafts, or certificates of de-
posit, and it would not affect the validity of the note.    (*Cleve-
land* v. *Loder*, 7 *Paige*, 557.)    What is necessary to the va-
lidity of a note, in such case is, that there should be nothing in
the agreement previous to the discount, to restrain the borrow-
er from receiving the full legal proceeds in cash or what is
equivalent to cash.    Hence the instructions of the circuit judge
in the commencement of his charge were substantially correct
when he advised the jury that if it was made a condition of
the discount by the bank, that Gilbert should take the certifi-
cate of deposit, instead of money, the transaction was usurious.
But the direction in the closing part of the charge was errone-
ous, or might have led the jury to erroneous impressions, where
he advised them that if Gilbert took the certificate with his own
consent, and it was not forced upon him, the transaction was
not usurious.    It can make no difference whether the offer to
take the certificate came from the maker of the note or the
bank.    If the maker of the note in his proposition for a dis-
count offered to take such a certificate, and this offer was ac-
cepted by the bank, it would equally avoid the note, as if the
maker had offered to pay eight or ten per cent discount.    If

Gillett *v.* Averill.

Gilbert had offered to take the certificate after the transaction of discount had been closed, then indeed the taking it by his own consent would not affect the note. But the judge's instructions were not so limited, and they convey the idea that if the proposition to take the certificate came from Gilbert it would relieve the case from the imputation of usury. This was erroneous. If the certificate was taken in persuance of an agreement or understanding made or had, at the time of the agreement to discount the note, with a view to procure the discount, it would avoid the note from whichever party to the transaction the proposition emanated; and under all the circumstances of the case such was the proper instruction to have been given to the jury. It is very apparent that the certificate of deposit was by no means equal in value for any of the purposes of the maker of the note, whether for remittance or otherwise, to the cash, or even the circulating notes of the bank. This is very distinguishable from the case of *Knox* v. *Goodwin*, (25 *Wend.* 643,) where the professed object of obtaining a certificate for remittance was evidently an honest one and carried out in an honest and business like method, leaving no room to infer an usurious intent.

It does not seem to me so evident that the circuit judge erred in refusing to charge specifically as the counsel for the defendants requested; but he did err in his instructions before referred to, and that error furnishes a sufficient ground for a new trial.

New trial granted.