### BANK OF SYRACUSE *v.* HOLLISTER.

A note, payable at the Bank of Utica, where the maker had no funds, was delivered, after business hours on the last day of grace, to the teller, who was also a notary, at his dwelling-house, for the purpose of demanding payment. He went to the bank, and being unable to obtain entrance, demanded payment of himself at the bank door. *Held,* a sufficient presentment to charge an indorser.

APPEAL from the Supreme Court. The action was against John Hollister as indorser of a promissory note, made by F. Hollister, April 6th, 1851, for the payment of $2750, one year after date, at the Bank of Utica.

The trial was had at the Onondaga Circuit, before Mr. Justice Allen, without a jury. It was proved that on the 9th of April, 1852, when the note became due, it was brought by a clerk of the plaintiff to the paying and receiving teller of the Bank of Utica, who was also a notary public, at his boarding-house in that city, at half past six in the evening, and delivered to him for collection or protest. He went to the bank, found the outer door locked and could not obtain admission. The notary and teller testified that thereupon " I made a demand of payment of the note of myself, standing on the steps before the outer door of the bank, and then went to my boarding-house and made out the notice of protest, and deposited it in the post office before seven o'clock, the mail leaving at eight, directed to John Hollister, Buffalo, Erie county, his place of residence." He further proved that F. Hollister, the maker of the note, had no funds in the bank, and that no one called at the bank to pay the note, or inquired for it during business hours, which closed at four o'clock, P. M.

The judge held that there had been no sufficient demand of payment, and ordered judgment for the defendant, which

Bank of Syracuse *v.* Hollister.

having been affirmed by the Supreme Court at general term in the fifth district, the plaintiff appealed to this court.

*T. T. Davis*, for the appellant.

*Francis Kernan*, for the respondent.

HARRIS, J. Two questions are involved in the decision of this case : First. Relating to the .time of presenting the note for payment; Second. The manner of presentment.

As to the time : The note was payable at the Bank of Utica. By making it thus payable, the maker agreed that the note should be paid during the usual business hours of the day upon which it matured. The holder also agreed that the note should be presented for payment within the same time. In giving effect to the contract the law presumes that the parties intended to conform to the known and established course of business at the place where their contract was to be performed. The general rule, therefore, is, that where the note is payable at a bank, it must be presented for payment before the usual hour of closing the banking-house.

Thus, in *Parker* v. *Gordon* (7 *East*, 385), a bill was payable at a banker's, whose usual time for closing his shop was six o'clock. The bill was presented after that hour. The shop was closed and the clerks gone. In an action against the drawer of the bill, it was held that the presentment was not sufficient.

But though the presentment is made after business hours, it will be sufficient, if a proper person be found at the place, to give an answer.. In *Garnett* v. *Woodcock* (1 *Stark.*, 475), the bill was payable at a banker's in London. It was presented for payment in the evening of the day when it became due. A boy returned for answer, " No orders." Lord ELLENBOROUGH said, upon the trial, " I think it perfectly clear that if a banker appoint a person to attend in order to

give an answer, a presentment would be sufficient, if made before twelve at night." So, where a draft, payable at the bank, " was presented for payment in the afternoon of the last day of grace, after regular banking hours, and the cashier of the bank, being there, refused payment, because there were no funds there belonging to the acceptor, it was held, that the cashier, whose duty it was to attend to business of this sort, being at the bank, and having returned a negative answer, and it appearing that the acceptors had provided no funds, the demand was sufficient. (*Flint* v. *Rogers*, 15 *Maine*, 67 ; *Bank of Utica* v. *Smith*, 18 *John.*, 230 ; *Henry* v. *Lee*, 2 *Chit.*, 124.) In the latter case, Lord ELLENBOROUGH said, in answer to the objection that a bill had been presented after business hours, "In general, it is not sufficient. It will not do, if nobody is there to receive ; but if somebody is there, and the person presenting the bill gets an answer, it is sufficient." BAYLEY, J., also said : "If it is presented after the usual hours, it is at the peril of the person present-ing it ; for, if nobody is there, it will not do, but if there is, then it is immaterial at what time it is presented." The latter judge, in his *Treatise on Bills*, also says : " A present-ment at a banker's, out of the usual hours, will be unobjec-tionable, if the banker, or any agent on his behalf, were there at the time of such presentment." (*Bayl. on Bills*, 212, *Am. ed.*, 1836.) So, also, Chitty says : " A presentment at any time in the day or evening is sufficient, if an answer be given by an authorized person." (*Chit. on Bills*, 278.) It was not too late, therefore, to present the note for payment at half-past six o'clock, if an authorized person could be found at the bank to give an answer.

We are therefore next to consider the manner in which the note was presented. It had been delivered to the teller of the bank, he being a notary, for the purpose of demanding payment and giving notice to the indorser. He was the very officer to whom the note should properly have been presented for payment. He was the person of whom the

Bank of Syracuse *v.* Hollister.

maker of the note should have inquired for the note, if he had come to pay it. If the money had been deposited to meet the note, he would have received it. He had been at the counter of the bank during the business hours of the day. He knew, and testified, that no person had inquired for the note, and that the maker had no funds in the bank. What, under such circumstances, was it necessary for the teller to do, in order to charge the indorser? He was the agent of the holder of the note to demand payment, and was at the same time the proper officer of the bank to answer the demand either by paying the note or refusing to pay. Had funds been provided to meet the note, he would have paid it. Knowing the fact that there were no funds, the teller, nevertheless, went to the banking house, and, finding the outer door locked, made a demand of payment of himself as the paying officer of the bank. Had he unlocked the door and entered the building, he being the person authorized to pay or refuse payment, it could not have been doubted that the demand was sufficient. This, of course, would have been an idle ceremony. The teller knew this and, therefore, abandoned his attempt to enter the bank. I think, however, he did enough to satisfy the condition upon which the indorser was to become liable. Suppose the note had been delivered to the teller before the close of banking hours, he would have had nothing to do but to give notice of non-payment. No formal demand would have been required. It would have been enough for him to be satisfied, either from his own knowledge of the fact, or an examination of the books of the bank, that there were no funds there to pay the note. Suppose that, when he went there, the teller had gained admission, he would then have had nothing to do but to return back and give the appropriate notice to the indorser. No proclamation, no clamorous demand, was required.

This view of the question is, I think, abundantly sustained by authority. In *Saunderson* v. *Judge*, ( 2 *H. Bl.*, 509 ), the action was against the indorser of a note payable at the house of Saunderson & Co., into whose hands the note had come by indorsement. On the day upon which the note fell due, they wrote to Judge, the indorser, giving him notice of the non-payment. It was held that, as they, at whose house the note was to be paid, were themselves the holders of it, it was a sufficient demand for them to turn to their books and see the maker's account with them, and a sufficient refusal, to find that he had no effects in their hands.

In *The Bank of the United States* v. *Carneal*, ( 2 *Peters*, 543 ), the action was upon a note held by the bank and payable there, and which was in the bank on the day it became due. After the usual banking hours were over, the note was delivered to the notary for protest; the officers of the bank at the same time informing him that there were no funds there for the payment of the note. This was held to be sufficient proof of a due demand of payment. STORY, J., said " where the bank is itself the holder of the note, no formal demand is necessary." *Fullerton* v. *The Bank of the United States*, ( 1 *Peters*, 604 ), is to the same effect. In the latter case, it was said " modern decisions go to establish, that if, the note be at the place on the day it is payable, this throws the *onus* of proof of payment upon the defendant."

In *Gillet* v. *Averill*, ( 5 *Denio*, 85 ), the teller of the bank where the note was payable testified that on the day the note fell due he drew the note from the package where it was kept, and knowing that the maker had no funds there, he gave notice of non-payment to the indorsers, without any formal demand of payment or actual examination of the maker's account. This was held to be a sufficient present-ment. ( *Ogden* v. *Dobbin*, 2 *Hall*, 112 ; *The Berkshire Bank* v. *Jones*, 6 *Mass.*, 524.) I am of opinion that enough was done by the notary to constitute a legal presentment and demand of payment.

The judgment of the Supreme Court should, therefore, be reversed and a new trial granted, with costs to abide the event.

DENIO, J., dissented; all the other judges concurring,

Judgment reversed and new trial ordered.