FIRST NATIONAL BANK OF GROTON v. CRITTENDEN *et al.*

*Promissory notes — presentment and demand — notice — waiver.*

A note was discounted and held by the bank where it was made payable. At the time it became due the maker had no funds at the bank for its payment. *Held*, that no formal demand of the maker was necessary under the circumstances, for the purpose of charging the indorsers.

A notice was dated and mailed upon the next day after the note became due, and stated that the note was "this evening protested for non-payment, the

same having been duly presented and payment demanded, which was refused." *Held*, that the notice was mailed in time, and was, in form, a good notice of demand and refusal, upon the day preceding.

A promise by an indorser to pay an over-due note must be made with full knowledge of any defect in the demand and notice, in order to amount to a waiver of such defect (per P. POTTER, J.).

*Montgomery County Bank* v. *Albany City Bank*, 8 Barb. 398; S. C., 7 N. Y. 45, distinguished.

EXCEPTIONS ordered to be first heard at general term. The case was tried before Justice BALCOM and a jury, at the Tompkins county circuit, in October, 1872. The action was brought upon a promissory note, of which Howell, one of the defendants, was maker, and the other defendants indorsers, which fell due on the 25th day of November, 1870. It is contested by the indorsers alone, on the ground of defective notice. The note was discounted at the plaintiff's bank. One of the indorsers, Hopkins, resided at Groton, where the plaintiff's bank is located, and the other, Crittenden, resided at Lansing, and received his mail at North Lansing. The notices of protest to both of the indorsers were deposited, at the same time, in the post-office at Groton, on the 26th day of November, 1870, the day after the note in question fell due, by Mr. Marsh, the cashier of the bank, between four and five o'clock, P. M., and the postage paid thereon.

There was then a daily mail from Groton to North Lansing, by way of Ithaca, which left Groton at a quarter past five o'clock, P. M. The post-mark upon Crittenden's notice, the only one produced, was November 26th, and, as testified to by the postmistress, letters were invariably stamped of the date when they left the office, in the mails, for the place of their destination.

There was evidence to show a waiver of the notice, by proof of an agreement to pay after the note became due by the indorsers; but inasmuch as the general term held that the notices were properly served, and the note itself sufficiently specific, it is not material to state the facts in reference to this branch of the case. At the close of the plaintiff's testimony the counsel for the defendants moved for a nonsuit, upon the grounds that no protest of the notes was made on the last day of grace, November 25th, and that the notices served were deficient for the reason that they refer to an alleged protest made on the 26th, instead of the 25th, of November, which motion was denied, and an exception duly taken to the decision of

First National Bank of Groton v. Crittenden.

the justice. The motion was renewed at the close of the whole testimony, upon the following, among other grounds, not material to be stated, viz.:

*First.* That to fix with liability either of the indorsers on the note in suit, Crittenden or Hopkins, a formal protest for non-payment by the maker Howell, must have been made, or facts must have existed, constituting a dishonoring of the note by the maker on the day of its maturity, November 25, 1870.

*Second.* That to fix each of the indorsers with liability, it must also be shown that due notice of such protest or dishonor of the note was given to him as soon as the following day, November 26, 1870.

*Third.* That the notice of protest shown to have been served on each, bearing date November 26, 1870, and stating the protest for non-payment by the maker to have been made on the evening of that day, the 26th, was defective, and not sufficient to charge either indorser with liability.

The motion was overruled by the justice, who laid down the following propositions as the law of the case, in reference to the questions considered.

*First.* The note in suit being in plaintiff's bank, where it was payable on the 25th day of November, 1870, the law adjudges that payment of it was then and there duly demanded, and as the maker had no funds then and there for its payment, it was then dishonored.

*Second.* The notices of protest, etc., to the defendants as indorsers of the note, were mailed in due time, and the postage paid thereon on the 26th day of November, 1870, and before the mail was closed on that day, which went the way the notice was sent to Crittenden. Hopkins resided at the place where the notice to him was mailed.

*Third.* The notices sent to the indorsers were sufficient. The clause in them that the note having been duly presented and payment demanded, which was refused, should be construed as notice that the note was presented, etc., on the proper day, for the notices ought to be construed, as the defendants were bound to read them without any reference to the proof here given of extraneous circumstances.

*Fourth.* The defendants were duly charged as indorsers of the note, and are liable to pay the same.

First National Bank of Groton v. Crittenden.

The defendant excepted to the decision of the court denying the motion for a nonsuit and to the rulings and decisions, and each of them separately, and asked the court to submit to the jury the questions as to the demand of the note on the 25th of November; as to the mailing of the notices of protest to indorsers, on the 26th of November, and whether the clause in the notices of protest, that the same having been duly presented and payment demanded, which was refused, should be construed as a notice that the note was presented and payment demanded on the proper day, viz., on the 25th of November, 1870, which requests were severally refused, to which refusals the defendants duly excepted.

The court then directed a verdict in favor of the plaintiff for the amount of the note and interest, $1,852.62, to which direction the defendants duly excepted.

The jury, under the direction of the court, found a verdict in favor of the plaintiff for the sum aforesaid. An order was made allowing time to make and serve a case, and exceptions and amendments, and the justice directed that the exceptions be first heard at general term.

*George Sidney Camp,* for plaintiff.

*Lyon & Donnelly,* for defendants.

MILLER, P. J. It must be assumed as an established fact in this case, that the notices of protest were deposited in the post-office at Groton, where the bank was located, as required by law. The evidence abundantly establishes that such was the case, and there was, I think, no question for the jury to pass upon in this respect.

In this aspect of the case, the question arises whether the notices served on the 26th of November were sufficient to fix the liability of the indorsers. The notices given stated that the note in question "was this evening protested for non-payment, the same having been duly presented and payment demanded," etc.

There was no evidence that a formal demand of the note was made. Having been discounted by the bank at whose counter it was payable, and belonging to the plaintiff, the law adjudged that payment of the note was then and there duly demanded, and as the maker had no funds at the bank for its payment, that it thereby became dishonored.

No formal demand of the maker was necessary, under the circumstances, for the purpose of charging the indorsers. *Gillett* v. *Averill*, 5 Denio, 88; *Bank of Syracuse* v. *Hollister*, 17 N. Y. 49 ; *Woodin* v. *Foster*, 16 Barb. 146, 149 ; *Nichols* v. *Goldsmith*, 7 Wend. 162 ; *Dole* v. *Gold*, 5 Barb. 498 ; *Gilbert* v. *Dennis*, 3 Metc. 498.

The case of *Montgomery County Bank* v. *Albany City Bank*, 8 Barb. 398; 7 N. Y. 459, is not in conflict with this rule. In that case the draft in question was not payable at a bank, but left for collection. The general rule laid down, therefore, that bills, notes and checks, when payable at a time certain, must be presented on the day they fall due, cannot affect the case now considered; for, according to the authorities, the note now in question was so presented and a demand duly made. Nor can there be any question that the formal protest, which is a mere statement that a demand has been made, and its result, need not be made on the day of the demand, but may be made afterwards. Chitty on Bills, 499, note *c*, 509 (Spg. ed. of 1836). The question to be considered in this connection then is, whether the notice in form was sufficient so as to hold the indorsers. This depends on the construction to be placed upon the language employed. An erroneous statement of the notary, in regard to the act done by him, is material. If the notice bears date on the third day of grace, and states that the note in question was last evening protested for non-payment, or if the notice bears date on the 4th day of July, and states that payment of the note had that day been demanded and refused, it is insufficient and discharges the indorser. It is virtually equivalent to a notice that he is exonerated from liability, and it does not inform him that the paper has been dishonored. It is, however, sufficient if it does not mislead the party, even if it be informal and defective. Edw. on Bills and Notes (1st ed.), 591, 592 (2d ed.), 558, 559. In *Ransom* v. *Mack*, 2 Hill, 587 the notice stated, that a demand had been made on the 4th of July and payment refused; although the proof showed that a regular demand had been made the day previous, and it was held, that the notice was insufficient, as it stated the wrong day. BRONSON, J., said, "If the notice had been that the note was duly presented, or if nothing had been said about presentment, the defendant might have inferred that a demand had been made at a proper time; but he was told that the holder relied on a demand which was utterly void; and instead of taking up the note and looking to the maker, he had a right to consider himself discharged."

It is quite apparent that the defect in the notice in the case cited was calculated to mislead the defendant, and, I think, very properly held that the notice was invalid. In *Wynn* v. *Alden*, 4 Denio, 163, the notice stated that the note had been "this day presented," etc., and was without date. It was held to be defective, as being without date; it was impossible to determine what date was intended, and whether it was before, or after, or on the day the note became due. The defect was, a serious one, and I think that the point decided does not affect the question now considered. But, even if it is applicable, the case cited has been virtually overruled by *Youngs* v. *Lee*, 12 N. Y. 551, where it was held, that a statement in the notice that the note is protested for non-payment is sufficient notice of presentment and demand, at the time and place of payment. See, also, *Artisans' Bank* v. *Backus*, 36 N. Y. 112. In *Walmsley* v. *Acton*, 44 Barb. 312, the note was due on the 9th and the notice of protest was dated the 10th, and stated that the note "was this day protested," without being signed by any one. It was held to be insufficient for want of a signature, as well as for the reason that it stated the time of protest to be the 10th, which was erroneous. This defect was clearly calculated to mislead, and is not in any way analogous to a case where the notice stated that the note had been "duly presented and payment demanded." The learned judge, in his opinion, cites *Wynn* v. *Alden, supra,* and *Ransom* v. *Mack, supra,* in support of the last ground; but I think they do not uphold this view. As to the first case, it is in conflict with the second, and, as we have seen, has been overruled. As to the latter, *Ransom* v. *Mack,* the words used were "this day demanded," which differs essentially from "this day protested." The case of *Walmsley* v. *Acton* must stand on the strong ground that the notice was without signature, and, therefore, invalid; and none of those, relied upon by the defendants, meet the facts presented by the notice in the case at bar.

It may also be remarked, that in none of the cases cited by the defendants was the note discounted by or belonging to the bank, who was the owner here, and at whose banking-house it was made payable. As we have already seen in cases of this character, no formal demand of payment is required, and the presumption is, that the demand was actually made when the note became due. In *Arnold* v. *Kinloch*, 50 Barb. 44, the notice was verbal, and extremely informal, merely stating that the note had not been paid, and re-

questing payment. It has, I think, no application to the case at bar where the effect of a written and formal notice is to be considered.

As no demand was really necessary, the statement that the same had been duly presented and payment demanded was, perhaps, within the authorities an immaterial circumstance, and would not vitiate and render ineffective the whole notice, as it has been expressly held that the notice need not state that the demand of payment was made. *Cayuga Co. Bank* v. *Warden,* 1· N. Y. 419.

It has not been held in any case that the notice should advise the indorser when the demand was made. See *Young* v. *Lee,* 12 N. Y. 551; *Artisan's Bank* v. *Backus,* 36 id. 100. It is enough if the language employed is such as, in express terms, or by necessary implication, conveys notice to the indorser of the identity of the note, " and that payment of it, on a presentment, has been neglected or refused." *Cayuga Co. Bank* v. *Worden,* 1 N. Y. 413 ; *Cox* v. *Clift,* 2 id. 118. The object is to enable the indorser to take measures for his own security. *Bank of Cooperstown* v. *Woods,* 28 N. Y. 545, 559.

Regarding the language employed in the light of the principles laid down in the authorities on the subject, I think that the fair construction of the words to. be interpreted is, that the note was protested on the day of the date of the notice; that it was duly, ·that is, properly and lawfully, on the day and time at which it became due, presented for payment, and payment on· that day and at that time demanded and refused.

The language employed expresses, in clear terms, the idea that the presentment and demand of payment, if necessary, was made in season, and at the right place. It conveyed all the information to the indorsers which enabled them to take the necessary steps to protect themselves.

If the views expressed are correct, and the notices were properly mailed and in proper form, the indorsers are liable, and the other questions raised are of no importance. Even if the judge on the trial was in error in his other rulings, it cannot affect the case, and is no ground for a new trial.

A new trial must be denied, and judgment ordered on the verdict for the plaintiff, with costs.

P. POTTER, J. The plaintiff was the *bona fide* holder and owner of the note in question for value. The contract which the law

implies between the indorser and indorsee or holder of such a note is conditional. The condition is, that the indorsee shall perform two distinct acts on his part, to wit: 1st, that in case of non-payment by the drawer, the indorsee shall duly present the note for payment on the last day of grace; and, 2d, that the indorsee shall give immediate notice of the dishonor or non-payment to the indorsers. Unless these two conditions are performed, the indorsers are released from liability. The place of payment in this case was the plaintiff's bank. This was the place to present the note. The time to present the note was the 25th of November, 1870. The note on that day was in the plaintiff's bank, and as the law will presume, ready to be surrendered on payment. The drawer on that day was not at the bank; he had no funds there to meet the note. No personal demand could be made of him. He had not had any funds there; he did not afterward have funds there to meet the note. The first question therefore is, was there such a demand of payment as will meet this requirement of the law, and of the contract?

I understand the law to be that it was the drawer's duty to be at the bank within the usual hours of business on the last day of grace to pay the note; that he has the whole period of the usual banking hours to pay it, and if he does not pay it within those hours, it is equivalent to a demand and refusal on his part. This was so held in *Bank of United States* v. *Carneal*, 2 Peters, 548. That the drawer would so attend to the payment of his note is the implied agreement of the indorser, not, however, waiving the right to notice in case of dishonor. See *Berkshire Bank* v. *Jones*, 6 Mass. 525. With full knowledge by the plaintiff of the omission of the drawer to meet his obligation; his neglect to appear in person; and in the absence of funds to pay the note, the formal demand of themselves, or of an empty room with nobody to hear it, would have been an idle, as it would have been a useless, ceremony. *Bank of Syracuse* v. *Hollister*, 17 N. Y. 49. It was expressly held in the case of *Gillett* v. *Averill*, 5 Denio, 85, " that where a note is held by a bank payable at the same bank, no formal demand of the maker is necessary in order to charge the indorser. It is sufficient if the maker have no funds there at its maturity to meet it." No unmeaning proclamation at the close of banking hours is necessary; it is never made in such cases. See *Ogden* v. *Dobbin*, 2 Hall, 112; Edwards on Promissory Notes (1st ed.), 497; *Saundison* v. *Judge*,

Hen. Black. 509; 3 Greenl. 147.   The sufficiency of the demand in this case, according to the cases cited, and under the circumstances, I think, may be held.

The protest of this note, it is also claimed, not having been made until one day after the last day of grace, was too late.   The protest of a note · creates no liability upon the indorsers, and is not a necessary act to secure that end.   It may be and usually is performed at the time of presentment and demand of the note on the last day of grace, and in this case, it seems to have been somewhat confounded with the act of demand as a *necessity*, in order to fix the liability; but this is a mistake, so far as relates to promissory notes or to inland bills of exchange.   In many cases the protest by a notary may be important to the holder as evidence, inasmuch as the law has made it *evidence* of the fact of a due presentment to the maker and of due notice to the indorser, which, in case of death, or other accident, or absence of witnesses, is admissible to prove those facts.   It is a mere solemn declaration in writing, by a public notary under seal, that the note or bill (describing it) was on a certain day presented for payment or acceptance, and that such payment or acceptance was refused, and then protests against the parties *liable* for all costs or damage which may arise therefrom. This protest may be made at the time of presentation and demand, or at any time afterward.

The other condition in the contract of indorsement is, that the indorser shall have immediate, or, as it is sometimes expressed, reasonable notice of the dishonor.   There are abundant and substantial reasons why this condition should be performed, not necessary here to discuss.   The law determines with great precision what is reasonable time.   It may be given on the day of dishonor after business hours; it may be given on the next business day. *Howard* v. *Ives*, 1 Hill, 263; Chitty on Bills, 513; *Cuyler* v. *Stevens*, 4 Wend. 567; Edw. on Prom. Notes, 615.   All these cases and authorities hold that the next day after demand or presentation is within a reasonable time — in other words, is immediately.   The evidence in this case is, that notice of dishonor was mailed on the 26th of November, which was the day following the last day of grace.   If we are right upon the first preceding point that the maker's default on the preceding day to be at the place of payment, or to have funds there to meet his note, is equivalent to a demand refused, then the notice in this case was in time and was sufficient

in form.   True, the clerk in the bank, by an error in the calcula-
tion of time, entered the note in the books of the bank as falling
due on the 26th.   Had the drawer been ready on the 25th, or had
he funds in the bank on that day to meet the note, this mistake
might have been material, but as it turned out it was of no mate-
riality.   So far as presentment and demand was in question, as
much was done by way of demand on the 25th as on the 26th.
The needless empty formality was legally dispensed with by the
drawer's default to do those things, which the indorser's implied
contract was that he should do.   The *notice* of dishonor was in
time on the 26th.   The notice, that it "*was this evening protested,*"
was a good notice of protest, if any notice of protest was necessary,
and the protest then made was in time.   The notice does not state
that the note had been on that day presented and payment
demanded, but that the "same had been duly presented and pay-
ment demanded."   This was true according to the letter, and
according to law as we have held.   It could not, it did not, mislead
the indorsers, or deprive them of any remedy against their prin-
cipal by any delay.   I think, therefore, the indorsers had legal
notice of the dishonor, and within the legal time — within reason-
able time.

If we are right in the foregoing views, it becomes unnecessary to
discuss the question in the case upon which the plaintiff's counsel
seems to place the greatest weight, viz.: The indorser's agreement to
pay or settle the note after notice of dishonor, thereby waiving
all defect in the notice.   This claimed agreement on the part of the
indorsers, as the evidence shows, was a negotiation to settle, with
the understanding on their part that the note had been duly pre-
sented and payment demanded of the drawer on the last day of
grace.   Before the settlement was consummated, but while the
parties were together, the note being produced, its date examined,
and calculation of time being made, and comparing it with the
date of the notice of dishonor and protest, they discovered, as they
supposed, a defect in the date of presentment, demand and protest,
which released them from liability as indorsers.   Their only agree-
ment to pay or settle was based upon the mistaken assumption of
*fact*, that the last day of grace was the 26th instead of the 25th
of November.   When they learned this mistake they refused to
give their notes and to consummate the settlement, under the belief
that they were released from liability.

In my opinion, the agreement or attempt to settle by a party in ignorance of the facts, or upon a mistaken assumption of facts, or without full knowledge of the facts upon which the agreement or promise is made in such case, cannot be regarded as a waiver of all defects in the presentment, demand, or in the service of notice. In the nature of things, upon moral principle, upon the principle of good common sense, it would be wrong so to hold. It is upon the same principle as that of the ratification of the unauthorized act of an agent. It is only a waiver of obligation, or ratification of the act, when the agreement is made with full knowledge of all the circumstances relating to the subject. By the refusal of the indorsers to fulfill or carry out the agreement, they stood just as they did before the negotiation. But it is unnecessary further to discuss this point. If we are right upon the point first examined, the verdict should be sustained and judgment entered thereon for the plaintiff, with costs.

PARKER, J., concurred in the result.

*Judgment on the verdict.*