OOTHOUT *vs.* BALLARD and others.

The maker of a promissory note has the whole of the last day of grace within which to pay it ; and though he should in the course of the day refuse payment, which will entitle the holder to protest it and give notice to the indorsers, yet if he subsequently, on the same day, makes payment, it is good, and the notice of dishonor becomes of no avail. Hence an action commenced on the third day of grace, though after protest, will be prematurely brought.(a)

In respect to the time for commencing a suit, there is no distinction between a note payable at a bank, and one payable at large, or at the counting house of the maker.

THIS action was brought against the defendants as indorsers of a promissory note, which fell due at the Bank of Chemung, 26 and 29th November, 1862, (*Saturday,*) on which day the Elmira banks opened at 10 in the morning and closed at 1 P. M. The holders had left the note with the Elmira Bank for collection, and Mr. Corey, the cashier of the Elmira Bank, during bank hours, on the 29th November, presented the note for payment to the Bank of Chemung, which was refused. The note was thereafter protested, and due notice thereof directed to the defendants under their firm-name of W. W. Ballard & Co. (by which name they had indorsed the note) deposited in the post office at Elmira, where the defendants reside, which was received by one of the defendants about a quarter to 6 o'clock P. M. and *before* the service of the summons and complaint in this action, which were served shortly thereafter, and on the same day. The maker did not defend, but the indorsers severally put in answers in which they insisted that the action was prematurely brought. The action was tried at the Chemung circuit in April, 1863, before Hon. JOHN M. PARKER. The only question upon the trial was whether the suit could be brought upon the note on the last day of grace. The judge decided that it could, because the note was payable at a bank ; and that was the only question presented by the exceptions.

(a) See *Smith* v. *Aylesworth*, 40 Barb. 104, S. P.

*Smith, Robertson & Fassett,* for the plaintiff. I. The books are full of cases holding that a note payable at bank is, *by its terms,* an agreement to pay within banking hours. These cases are summed up in Edwards on Bills, 526, as settling the principle that, " In respect to bills and notes, payable at bank, *the engagement of the parties is* that payment shall be made during the *usual hours of business or banking hours,* on the day when the same became payable." And by our court of appeals as follows : " By making the note payable at the bank, the maker agreed that the note should be paid *during the usual business hours* of the day upon which it matured. In giving effect to the contract the law presumes that the parties intend to conform to the known and established course of business at the place where their contract was to be performed. The general rule, therefore, is, that when the note is payable at a bank, it must be presented for payment *before the usual hour of closing the banking house."* (17 *N. Y. Rep.* 47.) In *Parker* v. *Gordon,* (7 *East,* 385,) a presentment after bank hours was held insufficient. *(Elford* v. *Leed,* 1 *Maule & S.* 28.) In *Church* v. *Clark,* (21 *Pick.* 310,) the same doctrine is held ; and in other cases too numerous to cite. *(And see Story on Prom. Notes,* 269.)

II. If the law be correctly stated in the foregoing point, it follows that the note in suit, being made payable at the Bank of Chemung, where banking hours closed at 1 P. M., is the same, in legal effect, as if the words were inserted in the body of the note " payable before 1 o'clock P. M." If the note were so drawn in terms, no one could question the holder's right to sue immediately after one o'clock, and the whole history of the common law does not show an instance where such right was ever denied by the courts. On the contrary, this point has been, in every reported case where made, held with the plaintiffs. (*Veazie Bank* v. *Wine,* 40 *Maine,* 62.) And see *Id.* 109, where the court held, " If a note is payable at bank, a suit may be properly commenced on the last day

Oothout *v.* Ballard.

of grace after banking hours, without demand." *Boston Bank* v. *Hodges*, (9 *Pick.* 420,) *Church* v. *Clark*, (21 *Pick.* 310,) holds a like doctrine. *Staples* v. *Franklin Bank*, (1 *Metc. Rep.* 43; 2 *Hill*, 635,) recognizes the same doctrine. The thorough and exhaustive treatise of Prof. Parsons on Bills and Notes, collates and discusses all the authorities upon this point, stating the law, at p. 462, vol. 2, to be, that where the note is payable at bank " the suit may be commenced after bank or business hours." And see numerous cases cited below, point 5.

III, And there is no reported case holding any other doctrine upon the subject, either in this or any other country. (1.) The cases relied upon by the defendants' counsel are cases where the notes *were payable at large*, and not payable at bank, No one questions that where a contract, other than a bill or note, is to be performed on a certain day, the party has reserved, *by the terms of his contract*, the whole of that day to perform it. In *Osborn* v. *Moncure*, (3 *Wend.* 170,) the court apply this principle to the note which was there manifestly payable at large, (demand being made at the counting house of the defendant.) In 12 *Wend.* 517, the notes were at six months, and manifestly payable at large, and the remarks in that case upon this question are *obiter*. In 2 *Miles*, 353, the note was payable at large. In 8 *Cowen*, 203, the action was brought on the first day of grace, and the note was payable at large. In 11 *Smedes & M.* 452, the note was payable at large, it seems from note (I), 1 *Parsons on Notes and Bills*, 410, and was decided on authority of *Mart. & Y.* 237, which holds no such doctrine. In 6 *Watts & S.* 179, the note was payable at large, and was sued on the *second* day of grace. See all the English cases cited by defendants' counsel stated at length and reviewed by Shaw, J. 1 *Metc.* 43, (2.) The cases holding that a presentment after bank hours will answer to charge an indorser, if an authorized officer of the bank be found at bank, to whom the presentment can be made, do not shake the legal principle, that the con-

tract is broken if the payment be not made in business hours, but all recognize it with emphasis. (17 *N. Y. Rep.* 47, &c. 3 *E. D. Smith,* 48.) They limit the rule to those cases *where the maker has no funds,* admitting the maker has failed to perform, and allowing a presentment after time, in order that a formal notice may be given to the indorser, *of such breach already committed.* This rule is in analogy with the rule of law, which does not require a check or bill of exchange to be presented to the drawee, when the *drawer is without funds,* as where it is drawn against a fund. The presentment of a note in such case is a useless ceremony. So the courts held a late one, (and may hereafter hold that *none at all*) will answer when there are no funds. (15 *Maine,* 67. 18 *John.* 231. 2 *Chitty,* 124. 17 *N. Y. Rep.* 48.) It is so held 33 *Penn. Rep.* 134. Nor does the rule, to this extent even, apply when the note has been once presented within business hours. (*Whitaker* v. *Bank of England,* 1 *Cromp. M. & R.* 744. 6 *Carr. & P.* 700.) Where it is held, that a bank which has refused payment during business hours and after business hours receives funds, and is then called upon by the notary, *is not bound to pay the bill.* (1 *Met.* 43. 3 *E. D. Smith,* 48.) And the same doctrine is even more expressly held in *Martin* v. *Mechanics' Bank,* (6 *Harris & John.* 235.) Where the court decide that a bank *the holder of a note,* receiving the money of the maker, after dishonor, *may allow the maker to withdraw the funds* and still hold the indorser. And see the same law deduced from the cases, 2 *Parsons, Bills and Notes,* 252. The proof shows here, that the bank closed at 1 P. M. There is no presumption that an officer could have been found there after that hour, who would have done business. If there be, so much the worse for the defendants. Why did not they find him? But within the foregoing decisions, as well as in plain sense, without the aid of decisions, the exceptional rule, allowing a late presentment for some purposes, has no application to the facts of this case.

Oothout *v.* Ballard.

IV. But the great question suggested by this case, and probably hereafter to come before the court, is whether the decision in *Osborn* v. *Moncure*, (3 *Wend.* 170,) is to be stood by or abandoned, out of a " decent respect for the opinions of mankind." That case is an ill-considered case, and cannot be sustained upon principle or authority. Indeed, the reasoning of Judge Sutherland, holding that the right of action against the indorser does not accrue *till the next day after* the indorser is charged, is in itself a solecism, a *felo de se.* How does it stand to reason, that the holder has a right of action against the indorser, legally charged, by reason of the maker's default, and yet having that right of action he can't sue till the next day ? It was for a time questioned, whether the demand could be made at any time during the day. (1 *C. & P.* 555, 676. 4 *B. & C.* 339. *See* 1 *Parsons*, 417. *note a; id.* 414, *note s.*) But it is now thoroughly settled, that the demand may be made at any reasonable hour of the third day of grace, and when payable at bank, at any time after the bank opens. (1 *Parsons on Bills and Notes*, 417, *note a, and authorities cited.*) And if not paid on such demand, the maker has failed to comply with his contract, the note is dishonored, and the indorser by proper notice immediately charged. It follows, *ex necessitate*, that the right of action accrues the very moment the indorser is charged, and the moment the holder has a right of action for *the expenses of protest.* No court can hold otherwise and pay respect to " inexorable logic."

V. But the overwhelming *weight of authority* also, is against the doctrine of *Osborn* v. *Moncure*, and in support of the holder's right to commence his action on the third day of grace, and immediately after the dishonor of the note. (*Staples* v. *Franklin Bank*, 1 *Metc.* 43. *Greeley* v. *Thurston*, 4 *Greenl.* 479. *Shed* v. *Brett*, 1 *Pick.* 401. *Wilson* v. *Williman*, 1 *Nott & McC.* 440. *Dennie* v. *Walker.* 7 *N. H. Rep.* 199. *Church* v. *Clark*, 21 *Pick.* 310. *Manchester Bank* v. *Fellows*, 8 *Foster*, 302. *Coleman* v. *Ewing*, 4 *Hum.*

241. *Lunt* v. *Adams,* 5 *Shep.* 230. *Leftly* v. *Mills,* 4 *D. & E.* 170, *Buller, J. McKenzie* v. *Durant,* 9 *Rich.* 61. *Veazie Bank* v. *Winn,* 40 *Maine Rep.* 62. *New England Bank* v. *Lewis,* 2 *Pick.* 125. *City Bank* v. *Cutter,* 3 *id.* 414. *Park* v. *Paige, cited* 1 *Metc.* 48. *Crenshaw* v. *McKiernan, Minor,* 295. *Farmers' Bank* v. *Duvall,* 7 *Gill & J.* 79. *Ammiedown* v. *Woodman,* 31 *Maine Rep.* 580. *And see Boston Bank* v. *Hodges,* 9 *Pick.* 420 ; *Whitwell* v. *Brigham,* 19 *id.* 117 ; *Flint* v. *Rogers,* 15 *Maine Rep.* 67 ; *Pierce* v. *Cate,* 12 *Cush.* 190.) And see also an exhaustive review of the cases in 2 *Parsons on Bills and Notes,* 461, deducing the rule as unquestioned, that, when the note is payable at bank suit may be brought after bank hours, and the correct rule to be, where payable at large, that the action may be brought on the third day of grace, after presentment at a reasonable hour ; but if no presentment and demand, then not till close of business hours. (1 *Parsons, Notes and Bills,* 410, 421.)

VI. The cases holding the law with the defendants, all fail to discriminate between agreements where grace is allowed, and those where the day of performance is fixed. " These days of grace take their name from being days of indulgence granted to the maker. The usage was at first probably discretionary and voluntary on the part of the holder, and gradually ripened into a right." (*Story, Prom. Notes,* § 215.) The number of days of grace depends upon the custom of merchants in different cities, and the usage of banks. That paper falling due upon the third day of grace differs in respect of the time when it must be paid and *ex necessitate,* in respect of the time when the action lies, is well illustrated by the decisions in respect to bonds, agreements and notes, payable on a day fixed without grace when that day falls on *Sunday.* In all such cases the law gives the maker *the next day* to pay. (*Salter* v. *Burt,* 20 *Wend.* 205. *Avery* v. *Stewart,* 2 *Conn. Rep.* 69.) Yet when the *third* day of grace falls on Sunday it must be paid *the day before.* And the reason for this difference is, " That as the allowance of the days of grace is a

Oothout *v.* Ballard.

mere indulgence to the maker, it shall be granted only in cases when it will not work any extra delay to the holder of the note, but he shall be entitled to strict payment at the *punctum temporis* of the note." (*Story, Prom. Notes,* § 223.) See the question in this aspect discussed, 1 *Metcalf,* 43 ; 4 *Humph.* 241, *and* 1 *Parsons on Notes and Bills,* 415.

VII. The defendants' reasoning is in a circle. They argue that the action cannot be brought on the third day of grace, because the banks may reserve the interest in advance for the three days ; and in turn it is argued that the interest can be reserved for the three days, because the holder cannot sue till the next day. The defendants' counsel cannot assume that the interest may be reserved for the three days, if that depends upon the question whether the holder can sue on the third day. Suppose the three days interest may be reserved, it is not a logical sequence that the holder may not sue on the third day. The law does not recognize fractions of a day, both upon general principles, and upon the maxim *de minimis.* It is to be observed, however, First. That such a question, to be worthy of consideration, must arise upon a note payable at large, not at bank, where, as shown by our first point, the instrument, in legal effect, expresses the time of day by which it is to be paid ; and Second. This discussion has no pertinency here, because no interest was discounted on this note, and could not have been, as the note is drawn upon interest.

*R. King,* for the defendants. I. An action cannot be brought upon a promissory note on the last day of grace. The maker has the whole of that day to pay it in. (*Osborn v. Moncure,* 3 *Wend.* 170. *Hopping* v. *Quin,* 12 *id.* 517. *Bank of Utica* v. *Wager,* 2 *Cowen,* 766, *per Savage, Ch. J. Edwards on Bills and Notes,* 525, 6, 7, 540, *and cases there cited.* 1 *Parsons on Bills and Notes,* 410 *et seq. and cases cited. Wiggle* v. *Thomason,* 11 *Smedes & Marshall,* 452. *Thomas* v. *Shoemaker,* 6 *Watts & Serg.* 179. *Walter* v. *Kirk,* 14 *Ill. Rep.* 55.)

II. The distinction made by the judge on the trial is not made in any decided case. In Massachusetts and some other states, a suit may be brought upon the last day of grace after demand, wherever the note is payable, but in New York and several other states it cannot be so brought. The New York cases make no distinction as to where the note is payable. The demand in *Osborn* v. *Moncure* was made to comply with the Massachusetts cases which require it before suit brought on the last day of grace. (*See Parsons, cited above.*) It was of course unnecessary to charge the defendants who were the makers; and the fact that it was made at their counting house is not conclusive that the note was payable at large. In that case the plaintiff's counsel cited the Massachusetts cases, but the court refused to follow them. Chief Justice Savage, who delivered the opinion in *Hopping* v. *Quin*, (12 *Wend*. 517,) evidently did not hold that there was any such distinction ; for he lays down the same doctrine in the *Bank of Utica* v. *Wager*, (2 *Cowen*, 766,) the note in that case being payable at the Bank of Utica. (*See that case at pages* 712, 13.) Edwards, in his treatise upon notes, makes no such distinction, and Parsons evidently does not suppose that the Massachusetts cases are the law in New York.

III. The reason of the Massachusetts doctrine is this : That the protest of the notes, demand of the maker and notice to the indorsers, fixes the liability of the parties, and a suit may at any time thereafter, and on the same day, be brought, (*Staples* v. *Franklin Bank*, (1 *Metc*. 43,) a reason which applies as well in the case of a note payable at large as at bank. The New York cases hold that the maker has the whole of the last day of grace after protest to pay. If the Massachusetts doctrine is right the New York cases are wrong. They cannot be reconciled. It would be productive of infinite mischief if the courts of the greatest commercial state in the Union should make the distinction attempted in this case, and practically makes notes payable at bank due one day earlier than those payable at large.

Oothout *v.* Ballard.

*By the Court,* MASON, J.  The only question presented in this case is whether a suit can be maintained against the indorsers of a note payable at a bank, and which has been duly protested, where the suit is commenced on the day of the protest, or the third day of grace.  The rule in England, as understood by *Chitty,* is that the suit on the third day of grace is premature.  (*See Chitty on Bills,* 406, 407, 409, 8*th Lond. ed.*)  And such I understand to be the rule held in Westminster Hall.  (*Castrique* v. *Bernabo,* 6 *Queen's B. R.* 498.  *Lifferty* v. *Mills,* 4 *T. R.* 170.)  The rule is so understood by *Byles.*  (*See his late work on Bills, p.* 181.)  In this country there is certainly considerable conflict of authority over the question, in the courts of the different states.  The courts of Maine, New Hampshire, Massachusetts, South Carolina and some others have held that the suit could be commenced on the third day of grace, at any time after the close of banking hours and proper protesting of the note.  (1 *Pick.* 401.  21 *id.* 310.  8 *id.* 414.  1 *Metcalf,* 43, 48.  4 *Greenl. Rep.* 479.  7 *N. Hamp. Rep.* 199.  8 *Foster,* 302.  4 *Humph.* 241.  5 *Shep.* 230.  31 *Maine Rep.* 580.  40 *id.* 62.  15 *id.* 67.  *Wilson* v. *Williamson,* 1 *Nott & McCord,* 440.)  While on the other hand the courts of Pennsylvania, Ohio, Illinois, Mississippi, Alabama and some others have held the suit prematurely brought if commenced on the third day of grace.  (*Thomas* v. *Shoemaker,* 6 *Watts & Serg.* 179.  *Walter* v. *Kirk,* 14 *Illinois Rep.* 55.  *Wiggle* v. *Thomason,* 11 *Smedes & Marsh.* 452.  *Beavan* v. *Eldridge,* 2 *Miles,* 353.  *Randolph* v. *Cook,* 2 *Porter,* 286.  5 *Serg. & R.* 318.)

The rule in this state has long been regarded as settled that the suit commenced on the third day of grace was prematurely brought.  The question came before the supreme court in *Hogan* v. *Cuyler,* (8 *Cowen's Rep.* 203,) when it was held to be premature to commence the suit on the third day of grace.  The question was distinctly presented again in *Osborn* v. *Moncure,* (3 *Wend.* 170,) when it was distinctly held the suit could not be maintained, when commenced on

the third day of grace. Chief Justice Savage regarded the rule so well settled with us, in this state, that he held in *Hopping* v. *Quin*, (12 *Wend.* 517,) that where an attorney commenced a suit upon a note on the third day of grace and was beaten and then brought suit against his client to recover for his services, he was not entitled to recover; and in speaking upon this question he says: "it was the duty of the plaintiff to have known that a suit could not be brought on the last day of grace; and his bringing such a suit must be imputed either to negligence or ignorance. In either case it lays no foundation for an action against his client, who has been the sufferer." There is no case in the courts of this state to the contrary of these cases, while all the elementary books have treated our law in this state as settled in conformity to these cases. Judge Cowen so regarded it when he wrote his treatise. (1 *Cowen's Tr.* 220, *ed.* 1844,) where he lays down the doctrine distinctly, that the suit cannot be maintained if commenced on the last day of grace. And so *Edwards* regards it in his treatise on *Bills and Notes*, (see *pages* 525, 526, 527;) and the rule in this state is so regarded by *Parsons* in his treatise. (*See vol.* 1, *page* 440, *and also note i.*) Chief Justice *Shaw* regards our rule in this state as different from theirs. (1 *Metcalf*, 54.)

The rule in England seems to have conformed to a general practice—the practice to postpone notice of the dishonor and other proceedings, till the day following—so that it has been regarded amongst merchants as a right to have all of the last day of grace in which to pay. In *Hartley's case*, (1 *Carr. & P.* 555,) Abbott, Ch. J. on a motion to show cause, said, "I think the notice of dishonor given on the day on which the bill is payable, will be good or bad as the acceptor may or not afterwards pay the bill. If he does not afterwards pay, on that day the notice is good, and if he does it of course comes to nothing." And *Byles*, in his late valuable treatise on *Bills*, page 131, says: "The acceptor of a bill whether inland or foreign, or the maker of a note, should pay

Oothout *v.* Ballard.

it on demand made at any time within business hours on the day it falls due, and if it be not paid on such demand the holder may instantly treat it as dishonored. But," he adds, "the acceptor has the whole of that day within which to make payment, and though he should in the course of the day refuse payment, which entitles the holder to give notice of dishonor, yet if he subsequently on the same day makes payment it is good, and the notice of dishonor becomes of no avail." This is precisely as I understand the rule with us. Now if we admit that the courts of Massachusetts, Maine, New Hampshire, &c. have the better reason for their decisions, there is no such great principle involved in the case as would justify us in overruling our own cases and following theirs; especially so where we are supported by equal weight of authority on our side; and Parsons, who is an earnest advocate on the other side, admits that "there is strong reason for holding that a party bound to pay has the whole of the day of maturity." (*Parsons on Notes and Bills, vol.* 2, *p.* 460.) And our rule has certainly one advantage; it tends to uniformity in the law by conforming to the general rule with reference to all other contracts, which holds that when a day is appointed for the payment of money the payer has the whole of the day, down to the last moment, in which to tender the money.

It is proper to remark that none of the cases make any difference or distinction between the case of the maker or indorser. None can be made. As regards this question of the right to bring the suit, there is not and ought not to be any distinction between a note payable at bank and one payable at large, or at the counting house of the merchant; and none seems to have been recognized in this state. (2 *Cowen,* 766.) I know the general rule has been held, in regard to paper payable at bank, that it must be presented and a demand made within the business hours of the bank. This arises from the necessity of the case, as banks are generally shut after that hour and there is consequently an impossibil-

ity of making the presentment and demand after that, and yet it is expressly held that a presentment after business hours, even in the evening, if there be any officer of the bank there to answer, is good. (*Garnett* v. *Woodcock*, 1 *Stark. R.* 475. *Bayl. on Bills*, 212, *Am. ed. Chitty on Bills*, 278. *Henry* v. *Lee*, 2 *Chitty*, 124.) And it was held by the court of dernier resort in this state, in the case of the *Bank of Syracuse* v. *Hollister*, (17 *N. Y. Rep.* 46,) that where a note payable at the Bank of Utica, where the maker had no funds and which was delivered after business hours on the last day of grace to the teller, who was also a notary, at his dwelling, for the purpose of demanding payment, and he went to the bank and being unable to obtain entrance demanded payment at the bank door, it was sufficient demand to charge the indorser. The rule therefore in regard to paper payable at bank is that the holder must make the presentment during business hours unless he can obtain admission afterwards and find a person authorized to answer, or in some other way can get a satisfactory answer from an officer authorized, as was done in the case of the *Bank of Syracuse* v. *Hollister*. Now as to the notice of the default of the maker which is required to be given to the indorser, there is certainly no reason in the world why any different rule should be applied to the case of notes or bills payable at bank than in the case of those which are payable at large, or at the place of business of the merchant. The same rule applies in regard to the service of the notice in either case, and the holder is under no obligation to serve the notice any earlier in the one case than in the other. And if he has a right to make an earlier service in the one case than in the other it should not deprive the maker of his day to seek the holder of the note, and by tendering payment save a suit. Now if no demand is made, all the cases hold that the maker has the whole day in which to pay. (31 *Maine R.* 580. 2 *Parsons on Notes and Bills*, 461, *note* 2.) And as there is no necessity or good reason for having one rule applicable to one class of paper and

another applicable to another, I am for adhering to the rule as heretofore held in this state; and I fully agree with what was held by that learned and very able jurist, C. J. Gibson, in *Taylor* v. *Jacoby*, (2 *Barr's Penn. R.* 495,) that a note is not due, for the purpose of commencing a suit, until after the termination of the day of payment, although by commercial usage it may be demanded at a reasonable time of that day; that it falls under the general and well settled rule of law which rejects fractions of a day and which views the day as an indivisible point, and which gives to the maker the day and not a fraction of it. I am, for these reasons, in favor of granting a new trial; costs to abide the event.

New trial granted.

[BROOME GENERAL TERM, January 26, 1864.  *Campbell, Parker* and *Mason*, Justices.]