*1815.*

EAGLESON
v.
SHOTWELL.

*Executors keeping part of a fund, for commissions, and litigating in favour of their claim were decreed to pay costs.*

---

*October 6th.*

EAGLESON *against* SHOTWELL.

If, on application for a loan of money, the sale of shares in an insurance company, at *par,* is made the condition of the loan, when the shares are, in fact, below par, the transaction is *usurious.*

And if it be impossible to ascertain the cash value of the shares, the company having failed, the sale will be rescinded, and the mortgage taken by the lender, ordered to stand as security only for the *cash* lent, and the interest thereon.

WILLIAM EAGLESON, deceased, the husband of the plaintiff, in *June,* 1812, being in want of money, applied to the defendant, who agreed to lend him 2,000 dollars, on bond and mortgage, provided he would take, also, four shares of the stock of the *Commercial Insurance Company,* at par, or 250 dollars for each share. The bill charged that the stock was then worth only 125 dollars a share, and was a mere colour for a usurious loan; but the defendant taking advantage of the necessities and weakness of *W. E.,* the

loan was effected ; and a bond was, accordingly, executed, conditioned to pay the defendant 3,000 dollars, with interest, in one year ; for which a mortgage was given on two lots in *New-York ;* and the defendant advanced the 2,000 dollars in cash, and transferred the four shares of stock.

*W. E.,* on the 14th of *June,* 1813, by his last will, devised the principal part of his property to his wife, the plaintiff, and made her executrix. The defendant having advertised the lots for sale, under the power contained in the mortgage, the plaintiff prayed for an injunction to stay the proceedings, (which was granted,) and for relief generally.

The defendant, in his answer, stated, that though he was acquainted with the concerns of the *Commercial Insurance Company,* he was not able, in *June,* 1812, to ascertain the value of the stock, as it depended on the result of certain large claims for losses, by seizures under the *Berlin and Milan decrees,* &c. That he had no communication with *W. E. ;* but *Robert Jaques* applied for the loan of 2,000 dollars, and the defendant offered him that sum, if he would also take four shares of the stock of the said company, at par, otherwise he declined lending the money. That *Jaques,* after taking time to deliberate and make inquiry as to the value of the stock, acceded to the terms of the loan ; which was, accordingly, effected, the money paid, and the bond and mortgage received, through the hands of *Jaques.* The defendant denied all design to oppress, or take usury, &c.

The cause being at issue, and considerable proof taken, it was set down for hearing in *June* last, when an order of reference to a master was made. It appeared from the proofs, that the defendant was one of the *directors* of the *Commercial Insurance Company,* at the time of the loan of the money and sale of the stock.

On the coming in of the master's report, the cause was brought on to a hearing. The master (who had been ordered to ascertain and report the *cash value* of the stock of the

Vol. I.          3 Y

1815.

EAGLESON
v.
SHOTWELL.

*Commercial Insurance Company*, on the 27th of *June*, 1812, with the interest from that time, what payments had been made, and the amount now due, &c.) reported, that he could not, from any cash sales, ascertain the *cash value* of the insurance shares ; that, in *June*, 1812, they were below par, but how much less he could not say. From the proofs taken before him, which he reported, it appeared that the *Insurance Company* failed some time after the transfer of the shares by the defendant to *W. E.* He, also, reported some payments for interest and rents received by defendant, who had taken possession of the mortgaged premises.

*Baldwin*, for the plaintiff.

*Slosson*, contra.

THE CHANCELLOR. It is admited by the answer, that the sale of the shares, at par, was made a condition of the loan of the 2,000 dollars ; and, as the defendant was a director of the insurance company, at the time of the sale, he must have known of the embarrassed circumstances of the company, and that the stock was, at the time, of doubtful credit, and below par. This fact is established by the master's report ; and it was oppressive, and tended to extortion and usury, to make the acceptance of the shares, at par, a condition of the loan. If such contracts are to be supported, the provisions of the statute against usury would be eluded, and become of no avail. Selling stock at 75, to a person applying for a loan of money, when the price of stock, at the time, was only 73, was held, in *Doe* v. *Barnard*, (1 *Esp. Rep.* 11.,) to be clearly usurious. It is impossible to ascertain what the shares were worth at the time. There were no sales of them; and the few which have since been made, appear not to have been in the usual and ordinary course of business. They show that the stock never had, afterwards, any market price which approaches, in any dergee, near to their nominal value. It is impossible, then, to fix any deter-

minate value on them; and the only course to be adopted is, to rescind the sale altogether, as being made in fraud of the statute. This course is recommended equally by policy and justice.

I shall, accordingly, decree, that the shares be retransferred by the plaintiff to the defendant, and that the mortgage stand as a security only for the 2,000 dollars, with interest thereon; and that the defendant be at liberty to proceed to the sale of the mortgaged premises, only for the balance of principal and interest due on the sum actually loaned, together with the costs of such proceeding; and that the defendant pay the costs of this suit, except that part of the inquiry before the master, which related to the rents and profits of the mortgaged premises while in the possession of the defendant, and on which inquiry the defendant has not been found in default.

Decree accordingly.