Daniels, J.
The action was instituted to foreclose a mortgage executed by the defendants upon property owned by Bertha A. Deane, situate on Fifty-fourth street, in the *331 city of New York. It was incumbered by a preceding mortgage, on which there was unpaid about the sum of $70,000, and the mortgage in suit, together with another for $15,000 on the same property, were given to secure a loan of $20,000. The loan was in form made by the plaintiff, but in fact by the firm of Martin & Leask. The defense, which prevailed at the trial, was that it was made on terms securing to the lenders of the money more than the lawful, rate of interest, and that it was consequently void for usury. Whether the court rightly construed the evidence as entitled to this effect is the point upon which the disposition of the appeal must depend, for there are no exceptions to the exclusion or receiving of evidence which can be held to have been erroneously made during the trial. The objection has been taken in the outset that the effect of the evidence cannot be reviewed or considered upon the appeal, for the reason that the case has not stated that all the testimony given upon the trial has been set forth. But this objection is without foundation, for the case does state that it contains all the material testimony which was presented, which will include all the evidence bearing upon the controverted points in the action. Immaterial testimony has no such bearing, and not only may but it should be excluded, for it can be. entitled to no consideration in the disposition of the controversy between the parties. All that is pertinent and all that can be considered in any consideration of the case, is the material testimony. And as long as all that is material has been presented, the question is raised whether it justified the conclusion adopted as the result of the trial.
In obtaining the loan of the money for the defendant, John H. Deane acted for his wife, and his interviews and arrangements were carried on and made with George M. Yanderlip, who was a person engaged in the business of negotiating and obtaining loans of money. That it was not designed to obtain this loan under any agreement or arrangement for the payment of more than the lawful rate of interest, is clearly disclosed by the testimony of all the witnesses. Mr. Deane himself swears that he never had any idea that the act should be usurious. And Yanderlip, as, well as the witness Leask,' who acted for his firm in making the loan, gave evidence to the same effect as to this fact. And to avoid the possibility of a usurious transaction, what was proposed to be done was at the instance of Deane referred to the counsel of himself and Mrs. Deane, who agreed that the money could be legally loaned and appropriated, as it was proposed that should be done, by these individuals.
And as there was no usurious intent as a matter of fact *332 ón. the part of either of these persons, the only question in the case is whether what was actually done and performed,, did reserve to the lenders a greater rate of interest than that provided for by the statute, enabling the borrower to avoid responsibility on the ground of usury. There was no denial of the fact, as there could not be, that the twenty thousand dollars was actually advanced by the lenders to Mr. Deane for and on behalf of his wife. The lenders supplied the plaintiff with this sum of money as a deposit to her credit, and she drew her check for that amount, payable to the order of Bertha A. Deane, and. that check was-delivered to Mr. Deane as her attorney, and passed to his credit. The object of his wife in making the loan as stated, by himself was, that she was to loan him the money and that he was to have the use of it, arid as a matter of fact, did use a large part, if not the whole of it. His testimony was that he used as much as he needed. In addition to. the fact that the check for the money was delivered to him it was proven that he had general authority to act on behalf of his wife. And in his capacity of her agent and for himself as finally the "borrower of the money, he arranged with Vanderlip the terms under which the loan should be effected. It was a part of these terms that Vanderlip should receive the sum of fourteen hundred dollars-for his services and expenses in obtaining the loan. And a. check for that amount was drawn by Mr. Deane, and delivered to Vanderlip on the 7th of August, 1884, the day after the date of the check, for twenty thousand dollars. Out of that, he paid the sum of two hundred and sixty dollars for the expenses of the search and the examination of the title, and the residue of the eleven hundred and forty dollars was passed over by him to the firm of Martin &. Leaslc, and credited upon an indebtedness owing to them from Vanderlip. This under the authorities was not a. feature of the transaction upon which the charge of usury could be either made or sustained. The payment of this-amount to Vanderlip was the result of an agreement between himself and Mr. Deane. And under the authorities, applicable to this subject, it was not unlawful for Vanderlip to stipulate for the payment to him of this sum of money for his services of obtaining the loan. Condit v. Baldwin, 21 N. Y., 219; Van Duzer v. Howe, id, 531; Chatham Bank v. Betts, 37 id, 356; Philips v. Mackellar, 92 id, 34; Guggenheimer v. Geiszler, 81 id, 293.
The amount of this check was, under the agreement, the-property of Vanderlip, and the fact that he paid the larger-part upon his indebtedness to the lenders of the money,, will not support the defense of usury. It was his money to use it as he pleased, and they had no more benefit from *333 it than from any other sum which he, as their debtor, might have paid them in partial satisfaction of his own indebtedness to them.
Mr. Deane was also hable to Martin & Leask upon the same indebtedness on which "Vanderlip paid this money. They held Deane’s acceptances for, or by way of security upon, the indebtedness, and to the extent to which it was reduced by the payment Deane himself was benefited by it. For that reason Vanderlip applied to him for a further sum of $150 as a compensation for his own services, to be wholly appropriated to himself. The propriety of this application was acceded to by Deane, and he gave him a check for that amount, on which the money was received by Vanderlip. This sum, being paid to him professedly for his services in this manner, could not characterize the transaction as usurious any more than the other amount previously received by Vanderlip from Deane.
In the negotiations and the agreement for the loan made between Deane and Vanderlip it was agreed, in case it should be made that $5,000 of the money should be paid to Martin & Leask upon their account, which was against Vanderlip, and for which they also held the acceptances of Deane. These acceptances, amounting altogether to the sum of upwards of $20,000, had been made and used in obtaining loans and discounts for Deane, and they were held by Martin & Leask as an indebtedness against Deane, which they were, and also upon the account against Vanderlip, for which he himself was liable. Deane had made an assignment for the benefit of his creditors, and in that assignment these acceptances were preferred after other •indebtedness to the amount of about $300,000. It was supposed, however, that the preference insured the payment of the acceptances, for the reason that the estate of Deane transferred by the assignment, was believed to be more than sufficient for this purpose. Under this arrangement Deane, as the agent of his wife, drew a' check for the sum of $5,000, payable to Vanderlip, and delivered it to him, and Vanderlip paid the amount over to Martin & Leask, for which they gave him credit oh his account and delivered to him two of Deane’s acceptances amounting to the sum of $25,000 each.
They also executed an assignment of a corresponding amount of the preference in the assignment to Mrs. Deane. Whether the loan was usurious, depends upon the force and effect to be given to this particular part of the transaction. It was understood by Leask, if the loan of $20,000 should be made, that Vanderlip would pay him this sum of $5,000, and it was agreed with Deane that so much of the loan should be used 'in this manner by Vanderlip. The *334 latter testified that he was not obligated to pay this particular money to Martin & Leask, but that he promised Mr.. Leask to reduce his own indebtedness to him, as far as that could be done from all the moneys which he received m this business, and that he did so.
Upon the trial-it was held by the court that this part of the transaction sustained the defense of usury interposed in this action. And it has been strenuously urged by the defendant’s counsel that such effect should be legally given to the agreement made concerning this sum of $5,000 and the payment of it to Martin & Leask, the lenders. And authorities have been brought to the attention of the court-which are supposed to maintain this view, but they very essentially and materially differ from the facts of this case.
In Eagleson v. Shotwell (1 Johns. Ch., 536), it was made-, a condition of the loan that the borrower should take for part of it, shares in an insurance company which had failed.
In Rose v. Dickson (7 Johns, 196), the tranaction was in part in depreciated shares of turnpike stock. And so it was in Seymour v. Strong (4 Hill, 255), where the stock received for one-half the loan, was worth but seventy-five per cent of its par value.
In Pratt v. Adams (7 Paige, 615), the borrower received bills of exchange at a greater sum than their actual value.
In Dry Dock Bank v. Am. Life Ins. Co. (3 Com., 344), certificates, or post notes, of the lender were received of a, less value than an equal sum of money.
In Stuart v. Mechanics’ Bank (19 Johns., 499), the stock substituted was below par. And the transactions "were-legally of a like description in Gillett v. Averill (5 Denio, 85), Stockwell v. Richardson (2 Cent. Rep., 425), Knickerbocker Life Ins. Co. v. Nelson (78 N. Y., 137), Byrnes v. Labagh (25 Wk. Dig., 461), and Wyeth v Braniff (84 N. Y., 627).
But this was not such a transaction as the courts in either of these instances held to be usurious, for the reason that the lenders received for the loan and forbearance of the money, in further, or additional pecuniary advantage-than was secured to them by the bonds and mortgages. Vanderlip stated himself to be solvent and responsible. And this evidence, together with that relating to the preference of the acceptances in the assignment established the-fact to a reasonable certainty that the indebtedness of Vanderlip and Deane to the lenders, was capable of being collected, and that the payment of this sum of $5,000 to them secured no other or greater advantage for the loan of the money, than that which they were entitled to under the statute regulating the legal rate of interest.
*335 If the preference in the assignment was in any respect precarious the risk was upon Vanderlip himself, and it was he, and not the lenders of the money, who would in that case be benefited by the payment of this sum of $5,000 on the acceptances. They received no more than they had the legal right to demand both from Vanderlip and Deane. And as Deane had the authority from his wife to use the money as he needed it, he could legally apply this portion of the loan to the payment of his acceptances, which were unquestionably just obligations against himself. And making the application of the $5,000, as it was made, inasmuch as it brought to the lenders of the money no additional advantages, could not render the loan usurious.
As the lenders were justly entitled to the payment of the moneys owing to them upon the acceptances of Mr. Deane, his wife could legally have executed and delivered a mortgage to them to secure the payment of a part or the whole of the indebtedness evidenced by the acceptances of her husband. If she had given such a mortgage it would have been for its full amount perfectly valid and available to the creditors. The law would sustain such a transaction beyond controversy. And as long as that would be its legal effect, 'it would seem to be no less a lawful disposition of the money to appropriate $5,000 of the loan to the payment of the same indebtedness. The result would be the same whether she assumed and secured the debt, or whether under her authority so much of the money was taken and applied towards its satisfaction, for it was no more than the appropriation of the amount to the payment of a legally equivalent indebtedness. And as her husband was designed to be the recipient of the money as a loan to himself, and the acceptances were his indebtedness, he could very well stipulate in the manner in which he did for the use which was made of this sum of $5,000. To constitute usury, it has been held that some consideration in addition to the lawful interest must proceed from the borrower. Clarke v. Sheehan, 47 N. Y., 188. But here there was no such addition to the lawful interest. The lenders by no possibility were secured or received more than the lawful rate of interest, and without that no ground existed for characterizing the transaction as usurious.
It was in the first instance subjected to some suspicion by reason of the circumstance that the loan was not made, and the securities were not taken, in the names of the actual lenders, but that was explained by Leask in the course of his evidence consistently with the legality of the transaction. His testimony was that he desired to avoid the criticism or censure to which he might be subjected by his business acquaintances for loaning money to *336 an individual who appeared to have become bankrupt as Deane was stated to be. That is stated to have been the inducement for making the loan in the name of the plaintiff, who was the aunt of Leask, and not that it was a device to avoid the effect of the statute and secure a greater than the lawful rate of interest. And as this was not controverted, .and no motive appeared for misrepresenting the fact otherwise than it was, the evidence may very well be accepted .as a truthful explanation of this circumstance. As the facts were established at the trial the defense of usury was not sustained. And as this court has been required to re-. view the evidence upon the appeal, and it is found to fall short of maintaining the defense, the judgment should be reversed and a new trial ordered, with costs to abide the event.
Van Brunt, P. J., and Brady, J., concur.